MICHAEL MCSHANE (CA No. 127944)
LING Y. KUANG (CA No. 296873)
KURT D. KESSLER (CA No. 327334)
  mmcshane@audetlaw.com
  lkuang@audetlaw.com
  kkessler@audetlaw.com
AUDET & PARTNERS, LLP
  711 Van Ness Avenue, Suite 500
  San Francisco, CA 94102-3275
  Telephone: (415) 568-2555
  Facsimile: (415) 568-2556

WALTER J. BIRD (UT Bar No. 8616)
  walterbird@hotmail.com
Walter J. Bird, Attorney At Law
  532 W. Oakcrest Drive
  Monticello, UT 84535
  Telephone: (435) 459-1838

*Counsel for Plaintiff and Proposed Class*

_____

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | |
|---|---|
| WILLIAM W. SIMPSON ENTERPRISES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.,<br><br>Defendant | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND OTHER RELIEF**<br><br>JURY TRIAL DEMANDED |

Plaintiff William W. Simpson Enterprises ("Plaintiff"), individually and on

behalf of all others persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendant The Hartford Financial Services Group, Inc. ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is a class action seeking declaratory relief and consequential damages arising out of Plaintiff and the putative class members' contracts of insurance with the Defendant.

2. To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or if it had to act in order to prevent further property damage, Plaintiff purchased insurance coverage with Defendants for multiple properties.

3. In light of the COVID-19 global pandemic and state, tribal, and local orders mandating that Plaintiff's businesses close, Plaintiff shut its doors for customers on March 26, 2020.

4. As a result, Plaintiff seeks relief in this action individually, and on behalf of all of Defendant's customers nationwide that have been improperly denied business loss insurance claims by Defendant.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interests and costs; and (c) no relevant exceptions apply to this claim.

6. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

7. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

8. At all relevant times, Plaintiff William W. Simpson Enterprises is a resident of Utah.

9. At all relevant times, Defendant The Hartford Financial Services Group, Inc. is a Delaware corporation headquartered in Hartford, Connecticut. Defendant is an insurance company that provides automobile, home, and business insurance to customers throughout the country.

## SUBSTANTIVE ALLEGATIONS

A. <u>Insurance Coverage</u>

10.  On or about June 1, 2019 Defendant renewed a contract of insurance with Plaintiff, whereby Plaintiff agreed to make premium payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiff for losses, including, but not limited to, business income losses at two properties in Bluff, Utah (hereinafter "Insured Properties").

11.  The Insured Properties include a gift shop, art gallery, and a restaurant.

12.  The Insured Properties are covered under a policy issued by Defendant with policy number 34SBAPJ9265 (hereinafter "Policy").

13.  The Policy is currently in full effect, providing property, business personal property, business income, and additional coverages between the period of June 1, 2019 to June 1, 2020.

14.  Plaintiff faithfully paid premiums of $13,027 yearly to Defendant specifically to provide additional coverages in the event of business closures.

15.  Plaintiff made a Policy claim on March 17, 2020.

16.  The Policy claim was denied on April 3, 2020.

B. <u>The Coronavirus Pandemic</u>

17. The scientific community, and those personally affected by the virus, recognize the Coronavirus, later labeled COVD-19 by the WHO (hereinafter "COVID-19"), as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the restaurant.

18. The Center for Disease Control ("CDC") has issued a guidance that gatherings of more than 10 people must not occur. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html (last visited on April 21, 2020).

19. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited on April 21, 2020).

20. COVID-19, by not just physically adhering to surfaces but also causing risk of death, has caused physical damage rendering property unusable.

21. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

## C. <u>Civil Authority</u>

22. On March 6, 2020, Utah Governor Gary Herbert declared a state of emergency in Utah. *See* https://rules.utah.gov/wp-content/uploads/Utah-Executive-Order-No.-2020-1.pdf (last visited on April 21, 2020).

23. On March 13, President Donald Trump declares a national emergency in response to COVID-19. *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited on April 21, 2020).

24. On March 16, 2020, the Utah Department of Health issued a public health emergency and limited services and businesses ("the Order"). *See* https://abc.utah.gov/documents/Public%20Health%20Order%20SL%20Co.pdf (last visited April 21, 2020).

25. Among other things, the Order announced that all Utah restaurants and bars must close to dine-in customers.

26. On March 20, 2020, the Navajo Nation issued Public Health Emergency Order No. 2020-03 – a stay at home/shelter in place order for all residents of the Navajo Nation. *See* https://www.navajo-nsn.gov/News%20Releases/NNDOH/2020/March/NDOH%20Public%20Health%

20Emergency%20Order%202020-003%20Dikos%20Ntsaaigii-19.pdf (last visited April 22, 2020).

27.     On March 23, 2020, the Insurance Commissioner of Utah, Todd E. Kiser, issued Bulletin 2020-2, detailing guidance for business interruption claims related to COVID-19, stating that the "Department urges insurers to promptly process and pay claims related to earthquake or COVID-19 – particularly claims for business interruption losses – to minimize the impact to insureds." *See* https://insurance.utah.gov/wp-content/uploads/2020-2Signed.pdf (last visited April 21, 2020).

28.     On March 27, 2020, Utah Governor Gary Herbert issued a "Stay Safe, Stay Home" directive for Utah. *See* https://coronavirus.utah.gov/full-text-governors-stay-home-stay-safe-directive/ (last visited April 21, 2020).

29.     On March 29, 2020, the Navajo Nation issued Public Health Emergency Order No. 2020-04 – extending the March 20, 2020 order and implementing a curfew for all Navajo Nation members. S*ee* https://www.navajo-nsn.gov/News%20Releases/NNDOH/2020/March/NDOH%20Public%20Health%20Emergency%20Order%202020-004%20Dikos%20Ntsaaigii-19.pdf (last visited April 22, 2020).

30.     Further, on April 10, 2020 President Trump held the following

exchange:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. **Business interruption insurance**, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. **But if I had it I'd expect to be paid**. You have people. **I speak mostly to the restaurateurs**, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege

>of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://www.c-span.org/video/?471115-1/white-house-coronavirus-curve-starting-level (last visited on April 21, 2020) (58:59 – 1:00:49) (emphasis added).

31.     These Orders and proclamations relate to the disruption of Utah businesses, evidence awareness on the part of both state and local governments within Utah that COVID-19 causes damage to property. This is particularly true in places where businesses in conducted, such as Plaintiff's, as the requisite contact and interaction for business to be conducted properly causes a heightened risk of property being contaminated. This disruption of business and series of closures constitute Civil Authority closures.

32.     Virtually all of Plaintiff's employees are Navajo and could not come to work after the orders issued by the Navajo Nation instituted shelter in place and quarantine mandates.

33.     Based on information and belief, the Defendants have accepted the Policy premiums with no intention of providing any coverage due to a loss and shutdown from a pandemic.

34.     A declaratory judgement determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage

acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of the Civil Authority Order, Plaintiff has incurred, and continues to incur, a substantial loss of business income and additional expenses covered by the Policy.

35. Consequential damages will help cure and mitigate the substantial losses Plaintiff is now facing.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

36. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), individually and on behalf of all others similarly situated.

37. Plaintiff seeks to represent nationwide class defined as:

- All persons and entities within the United States of America that (a) had Business Income coverage under a property insurance policy issued by Defendant; (b) suffered a suspension of business at the premises covered by their insurance policy issued by Defendant; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Business Income Coverage from the presence or threat of COVID-19 (the "Nationwide Class").

38. Plaintiff further seeks to represent, as part of a Utah Subclass, the

following defined persons and entities:

- All persons and entities within the State of Utah that (a) had Business Income coverage under a property insurance policy issued by Defendant; (b) suffered a suspension of business at the premises covered by their insurance policy issued by Defendant; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Business Income Coverage from the presence or threat of COVID-19 (the "Utah Subclass").

39. The members of the Nationwide Class and Utah Subclass (hereinafter, "the Class") are so numerous that joinder of all members is impracticable. Defendant has countless customers throughout the country. While the exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed putative class. Other members of the class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the class are similarly affected by Defendant's wrongful conduct

that is complained of herein.

41.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.  Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class, such as, *inter alia*, whether Defendant acted unlawfully by denying claims stemming from the closure of businesses and loss of businesses resulting from Civil Authority orders.

43.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### DECLARATORY RELIEF – BUSINESS INCOME COVERAGE

**(On behalf of the Nationwide Class, or alternatively the Utah Subclass)**

44. Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph in this Complaint.

45. Plaintiff brings this count individually and on behalf of the other members of the Nationwide Class, or alternatively individually and on behalf other members of the Utah Subclass.

46. Plaintiff's Hartford Policy, as well as those of the other Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Class members' losses for claims covered by the aforementioned policies.

47. Plaintiff and the other Class members have complied with all applicable provisions of the policies, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally denied insurance claims.

48. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

49. Defendant has denied claims related to COVID-19 on a uniform and

class wide basis, without individual bases or investigations, such that the Court can render declaratory judgement irrespective of whether members of the Class have filed a claim.

50. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

- The Order constitutes a prohibition of access to Plaintiff's Insured Property;

- The prohibition of access by the Order has specifically prohibited access as defined in the Policy;

- The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here.

- The Order triggers coverage;

- The Policy provides coverage for any current and future Civil Authority closures due to physical loss or damage from COVID-19;

- The Policy covers physical damage done by COVID-19 causing risk of death at Plaintiff's Insured Property;

- The Policy provide business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

- Resolution of the duties, responsibilities, and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

51.  Plaintiff seeks a Declaratory Judgement to affirm that the closures due to COVID-19 and the Orders closing businesses throughout the country trigger coverage of the Policy and the policies of the Nationwide Class.

52.  Plaintiff further seeks a Declaratory Judgement to affirm that the Policy, and the policies of the Nationwide Class members, provides coverage to Plaintiff and Nationwide Class members for any current and future Civil Authority closures due to physical loss or damage from COVID-19.

## SECOND CAUSE OF ACTION

## BREACH OF DUTY UNDER THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(individually, and on behalf of the Utah Subclass)**

53.  Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph in this

Complaint

54. Plaintiff brings this count individually and on behalf of the other members of the Utah Subclass.

55. By merely handwaving away the Civil Authority additional coverage section of Plaintiff's claim, Defendant has failed to conduct a reasonable investigation into the claim.

56. Utah Code R590-190-9(5) articulates that when an insurance company operating within Utah refuses to pay a claim without conducting a reasonable investigation, it is misleading, deceptive, unfairly discriminatory, or overreaching in the settlement of claims.

57. By acting in an unfair, discriminatory or misleading manner in Utah in their contractual duties, Defendant has breached their duty under the implied covenant of good faith and fair dealing.

58. By acting in such a manner, Defendant is depriving Plaintiff and the Utah Subclass their contractually negotiated rights to insurance coverage.

59. Plaintiff seeks consequential damages from Defendant for himself and the Utah Subclass for damages that flow from defendant's breach leading to an indefinite delay in insurance payout.

## RELIEF REQUESTED

WHEREFORE, Plaintiff herein plays as follows:

1) For a declaration that the Order constitutes a prohibition of access to Plaintiff's Insured Property.

2) For a declaration that the prohibition of access by the Order is specifically prohibited access as defined in the Policy.

3) For a declaration that the Order triggers coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff and Class Members for any current, future and continued civil authority closures of restaurants in Philadelphia County due to physical loss or damage directly or indirectly from the COVID-19 under the Civil Authority coverage parameters.

5) For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff and Class Members' Insured Property or the immediate area of the Insured Property.

6) For consequential damages from Defendants to compensate for the indefinite delay in insurance payout.

7) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: JULY 9, 2020      By:    /s/ *Walter Bird*

                                      Walter J. Bird (UT Bar No. 8616)
                                      Walter J. Bird, Attorney At Law
                                      532 W. Oakcrest Drive
                                      Monticello, Utah 84535
                                      Telephone: (435) 459-1838
                                      walterbird@hotmail.com

                                      Michael A. McShane (Ca. Bar. No. 127944)
                                      Ling Y. Kuang (Ca. Bar. No. 296873)
                                      Kurt D. Kessler (Ca. Bar. No. 327334)
                                      Audet & Partners
                                      711 Van Ness Avenue, Suite 500
                                      San Francisco, CA 94102
                                      Telephone: (415) 568-2555
                                      mmcshane@audetlaw.com
                                      lkuang@audetlaw.com
                                      kkessler@audetlaw.com

                                      *Counsel for Plaintiff and the Proposed Class*